This case is taken under submission. Our next case for argument is 2019-2277, also Uniloc v. Google. Mr. Poindexter, please proceed. Thank you, Your Honor. May it please the court, I wanna first address the claim construction of the single request. The board misconstrued the phrase single request as we noted. In our Blue Roof of 25, the claim language at least implies that the potential targets are identified as part of the generating step, not as part of the single request made by the requester. For instance, as we noted, if the single request required individual selection of the potential targets, it wouldn't make sense for the claim to further require generating a conference call request identifying each of the potential targets. Let me turn to the specification as the board misconstrued the spec as well, including that two different embodiments were both encompassed. The main dispute between the parties is that Uniloc views, and this is appendix 173, the paragraph that starts with as shown in figure three that both parties focus on, Uniloc has a position that these are alternate embodiments. Google accuses Uniloc of creating phantom sub-embodiments that we're kind of dividing everything to finally. And the point I wanna make is both parties refer to the more robust language that starts off this paragraph, and it's not really teased out in our briefs, but by that the applicant was meaning like an all bells and whistles embodiment with everything that could be possibly included. It wasn't saying this is the embodiment that corresponds to one particular claim. You would know, for instance, figure three is about one of the most robust figures I've ever seen in a patent thing. It spans three pages. The description of figure three is almost two columns. So, and not all features are claimed that are shown in figure three. For instance, figure three refers to proper user for credit card info and whether the credit card can be charged, but none of the claims, even the dependent claims in the patent recite anything about the credit card. So, I'm just pointing that out because Google's logic seems to want to force everything that's in described with figure three, including the step 312, to then be encompassed unnecessarily when in reality, they're two alternate embodiments. The one case that we wanted to highlight is PPC Broadband Corning. That's 815 at 747. That's a federal circuit decision, which after first noting that the patent specification at issue had 50 figures and 20 embodiments, the court noted, we will not adopt a position that the broadest reasonable construction is always the one which covers the most embodiments. The fact that one or more construction may cover more embodiments than the others is not category under the construction. Counsel, could I just ask you for clarification on the earlier case you were arguing and now in this one, is this case that you're referring us to now cited in your brief? This is not. If we prefer. Okay, so again, in the first appeal, we just heard you've made the same assertion. You've discussed in some detail one of our precedents that was not discussed. Yes, Your Honor. This argument, the argument, the principle that I'm saying was stated, we didn't cite this case. Did you cite any case? I don't recall. We didn't cite any case for this proposition. I'm just bringing it to your attention now. I was brought into this case earlier this month. I was aware of this case. And so when I started prepping for this, I wanted to flag it. I thought I should bring it to the court's attention. On the amendment, the board erred by assuming that there could be no disclaimer where the patent applicant distinguished art on multiple limitations. Here, and I could go through the steps, but I think it's fairly clear, the applicant's remarks confirmed a proper understanding of single request advocated by Unilock and amount to a disclaimer that Hames does not teach or suggest the method claim one because Hames proposes that a user determine whether attendees are available or whether you select one for invitation. This is a, and I'm gonna raise another case, Judge Prost, that I have not cited. But this one came up fairly recently. This is SpeedTrack, which is Amazon. He came on July of this year. And keeping in mind, these were briefed a while ago. This is stating where- That's why we have 28 J letters, right? For new precedent. That's true, Your Honor. Again, I identified this very late in my prep. So I'm just trying to flag it. But an applicant's argument that a prior reference- Counsel, I'm just gonna pause you for a minute. We get 28 J letters sometimes as late as the day before argument. You're citing cases that you had a month ago, according to you, the PPC case, but never cited to us. And now a case that came out in July that you never cited to us. And I understand you may have been brought on late, but- Just to clarify your record, I was not aware. I was not aware, sorry. Follow our rules. I understand, Your Honor. I'm bringing it to the court's attention because I'm aware of it now and I think it's relevant. Just for the record, I was not aware of the PPC case. But you understand the problem. The other side hasn't had the benefit of your raising this case. And so in their briefing, they didn't respond. As they would also, if you had introduced a 28 J letter, they would have the opportunity to respond. So that's problematic, is it not? I understand your concern, Your Honor. But I do want to at least read it as a record. And that case says, an applicant's argument that a prior reference is distinguished on a particular ground can serve as a disclaimer of the claim scope, even if the applicant distinguished the references on other ground. I think it's fairly well said, but we argued that proposition in our brief. Again, we did not submit case law supporting it. Can I ask you to talk about the absence of a motivation? Did you agree that if the board was sustainable, that is, that there was substantial evidence to support the board's finding that there was a motivation to combine Tanigawa with Liversidge, that you would lose even under your construction? Yeah, I think Your Honor is asking me if we lose on motivation to combine, then that kind of kills it for us. And that is right. We're dependent solely on the Tanigawa versus Liversidge combination. We're depending totally on motivation to combine. Right, so, and if I, maybe I might be confusing cases at this point, which I apologize, but you don't really make an argument in your blue brief that if you combine the two, that there is something missing. Your argument is that there wasn't a motivation to combine. Is that? That's correct, Your Honor. Okay, so why is there an absence of substantial evidence to support the board's finding of a motivation to combine, to take Tanigawa and use the single notification kind of method of rehearsal? Yeah, to address Your Honor's question, our argument is that the sole conclusion that they made was, well, first of all, let me take a step back. The board's decision does motivation to combine on an element-by-element basis. So to look at one element, they say, hence, there was a motivation to combine. For this element, there's a motivation to combine. They don't say broadly, okay, for all of these, this whole claim, we're gonna combine Tanigawa and Liversidge. So for the specific limitation at issue, the only conclusion was that the appendix on page 34, and that's where they say Petitioner's expert, Mr. Lipoff, credibly testifies that Tanigawa and Liversidge both described similar systems for converting IM session to conference call, and this is where the punchline is. That Opposita, it's spelled out longhand, would have understood that using a single vendor to generate a conference call request would also operate successfully. And our only point there, and this is a case we did thankfully cite, Your Honor, so, is the personal web tech case. And that is, basically stands for the proposition that it's not enough to have understood they could have been combined or something could be operate together, you have to show a motivation to combine. So our point, Judge Taranto, is that there is no finding for this limitation of a motivation to combine, they just say they could operate together. That's not the motivation to combine standard. So that's our main point. With that, I'll leave the rest for rebuttal, Your Honor. Okay, thank you, counsel. Thank you. Thank you, Your Honors.  So, there are three separate paths to affirm the board's decision, as we noted in our brief. The court can affirm the board's claim construction on single request, where Unilock has not provided any contrary argument under the construction that the board adopted. The court can affirm the board's findings of obviousness based on Tanigawa alone. And then the third is the one that I would like to focus on initially, is the court can affirm the board's findings regarding the combination of Tanigawa with Liversidge. As discussed already with counsel for Unilock, this does not require the court to reach the question of what the term single request means, at least not to resolve the dispute that's currently between the parties. Can I just, while I'm thinking of it, so on page 28 of the appendix, which is also 28 of the board's decision, the board recites your argument. Petitioner relying on testimony from Mr. Lipov, reasons that a person of ordinary skill in the art would use the single convert session, but wouldn't use the single convert session button of Liversidge in the interface of Tanigawa. And here's the reason, to provide the benefit of a simple user-friendly way to automatically initiate a conference call between IM participants. Is there a place where the board said, we agree with that? On the Wood question, they did say that they agreed that Mr. Lipov testified credibly. That appears later in the board's decision. Let's see. On page 34 of the appendix, this is just above the heading where it says set conference call request. The board found it. Right, but that's the sentence that Mr. Coide says, with I think some plausibility, that on its face, that sentence doesn't actually say the particular portion of what Mr. Lipov said, namely that the skilled artisan would be motivated to do it to gain the benefits of simplicity is something that we agree with. Two responses to that, Your Honor. One is that I believe they cited paragraph 86 does say the Wood, as well as if we go to appendix page 38 of the board's decision, the board did split the generating limitation, which is the limitation that contains the single request requirement. They addressed it under two subheadings. But at the appendix 38, the board expressly adopted this rationale on why it would have been obvious to combine the converse session. This is right at the top, the carryover from 37 to top of 38. Yes, Your Honor, because it would simplify the graphical interface of Tanigawa to do so, providing the benefit of a simple user-friendly way to automatically initiate a conference call between participants of an IM session. So this isn't a situation where we don't know what the board's rationale was for the Wood component. I always think of obviousness in terms of, could you have combined the references and would one of ordinary still have combined them? And our expert addressed both and the board provided rationale and cited to our expert on both of these points. And then separately, not just citing to our expert who said these things, separately said that exact feature that we relied on as the single request, the convert session button from Liversidge, the board said it would have been obvious the Wood component that Unilock is contending the board did not address. This says that it would have been obvious and it gives a reason for why it would have been obvious to do that. And you think it makes no difference if this is under, let's call it a separate headache in the board's decision? No, I do not think it makes any difference because it was all discussed in the context of the generating limitation. The board did take that in two pieces. It's one limitation, it has two parts to it. And I think of it as, are we left to wonder why the board found this motivation? And the answer is no. The board expressly told us why the combination would have been made by one of ordinary skill. And this is similar actually to a number of cases. I know Unilock cited the In Re Nuvasive case as supporting their argument, but it actually supports our argument. And the reason is because in In Re Nuvasive, the court talks about rationales that it found sufficient when it reviewed board decisions. And two of those examples, one of the rationales that the court approved in In Re Nuvasive was to minimize waste in the production process. The court talks about an earlier case, Nike versus Adidas. It says that was the rationale the board provided there and that was sufficient. So not only did that case find that rationale sufficient, but In Re Nuvasive said, we doubly approve of that as a rationale. It can be short, it can be to the point. Another one was discussed in In Re Nuvasive to allow for a greater degree of movement between the jaws of heavy machinery. That was in the Allied Engineering or Allied Erecting versus Genesis Attachments case that is discussed in In Re Nuvasive. You can see that the bar is not very high for determining whether the boards provided enough rationale for this court to review and then affirm. And the board here not only provided a rationale that is at least as extensive as those that were approved in In Re Nuvasive, but also found Google's experts' testimony credible, which provides substantial evidence for that view and also provides additional support for the rationale for why the board decided the way that it did. So I don't see how Unilock can argue that there was an insufficient rationale provided here when the board expressly provided it and then cited evidence that confirmed that. I do think that the Tanigawa and Liversidge combination is the most direct route to affirmance potentially just because there's no need to then get into the questions that Unilock has raised about claim construction. As you heard, they're not disputing that if there is a sufficiently articulated motivation from the board, then there is substantial evidence. They're not disputing at least that there's substantial evidence and we've identified evidence in our brief related to that. Another path, though, to affirmance is the Tanigawa combination, or rather Tanigawa obviousness findings from the board. The board found that Tanigawa discloses the single request even under Unilock's construction. This is another path that does not require resolution of Unilock's claim construction argument. And the board relied on Tanigawa's teaching that the user Taro issues an instruction single request singular to request voice chatting with the other two participants who were then in an instant messaging chat room essentially with that user Taro. And what ends up happening in the reference is the parties are all together in the instant message session, Taro issues that singular instruction, and then all of the parties end up in a voice chat session. Now, Unilock frames the issue here as being about silence within Tanigawa and that the fact that Tanigawa does not say, we're not gonna select the potential participants, the potential targets, that the fact that Tanigawa does not say that, they say is fatal to Google's obviousness position. But that's not all that Tanigawa says. We're not pointing to a blank portion of a page and saying, ah, that's the disclosure of the limitation. Tanigawa actually discloses selecting users or selecting potential targets when you're setting up the initial IM session. And that makes sense because you might have a very long, large address book. And when you don't have any communication ongoing at that point in time, you do need to select users. And there's no dispute, Unilock's brief agrees that there is selection of users at the IM portion. But then, when you already have an ongoing IM session, and the idea is to continue the conversation by voice because maybe things get too complicated, you'd rather just continue it, it'd be easier to resolve by voice, you wanna continue that conversation with everyone who you have already been chatting with. So there isn't a reason why you would need to then select those users. And our expert testified to that point as well. We're looking at the context that surrounds it. We're looking at the fact that when Tanigawa says that users are going to be selected, he told us that. And that's only in the stage where you're setting up the initial IM session. And then, when transitioning over to the voice chat, Tanigawa does not say, I then need to select those users again. So it's not a pure silence argument. And we cited the AC Technologies case in our brief for support. For the fact that a reference need not state a feature's absence in order to disclose a negative limitation. Substantial evidence supports the board's findings here. They cited Google's expert as well as the reference itself. And that is another path to affirming the board's decisions of obviousness. With those two being perhaps the most direct path, I am wondering if the court has any questions about the claim construction section. I have just a couple thoughts to share on that. I'll just say briefly that- Hey, see if you can do it without hand gestures. Thank you, Chief Judge Moore. Selecting targets is not the same thing as issuing a request for a conference call. And if we look at figure six, which is cited in our red brief, figure six of the triple zero patent, there is a figure that shows the user interface. It lists a number of potential targets. It identifies them by name. And then, the potential conference call requester can check the boxes. And that would be selecting users. But the thing is, when the boxes are checked, nothing happens. There's no conference call that ends up being initiated at that point. There's no request for a conference call at that point. It's really only the start call button that once the users are, or potential targets rather are selected, the start call button is what actually issues the request to start the conference call, and then does cause the system to then create the conference call request. So there's really a distinction between selecting users and actually issuing a single request for the conference call. And I think it's highlighted well in that figure. Does the court have any questions? Thank you, Your Honors.  I just want to address two brief issues. First, on the motivation to combine and Google's reliance on the Autry decision. It'd be one thing if the Boies decision said, look, here's what the experts said. Based on everything the experts said, there was a motivation to combine. That's the Autry case. That's similar to the Autry case. That's not what happened here. Again, for this element, what happened here is they said they credibly, that Mr. Ault credibly testifies, and the thing they focus on is something that's not the standard of motivation to combine. It's been rejected by this court in the personal web text. What about the bit at the very top of page 38, which I think is what Mr. Stach points to as making clear, or in Supreme Court terms, making what reasonably discernible, fairly discernible, that the board was in fact endorsing the motivation, which is incredibly simple. That is, the simplicity of a one-push button is the incredibly simple motivation. Right, but again, that section's in a different element. I mean, again, we read the Boies decision as kind of breaking motivation to combine down by elements, looking at everything individually. And so what they did here is they looked at the element of issue, and their finding for that element of issue was not a motivation to combine. That's their kind of point in a nutshell. Your Honor. In addition, also in this section two, again, the other point too is they kind of attempted to ship the bird to Unilog. They said Unilog's argument's wrong here. They shot down our argument for motivation to combine, but there's no affirmative finding of motivation to combine. The other point I wanted to address is Tanigawa. Yeah, if we don't agree, if we think there is an affirmative finding, it's just not in this section where you would like to see it. I mean, sometimes, you know, motivation to combine is entirely, it's its own section. It's not even done on some sort of element by element basis. It's hard for me to buy into what you're saying because the statement that spans 37 and 38 is really directly on point, adopting what on page 34 they say the petitioner argued, that using a single button would increase simplicity, and then 37 to 38, they said this convert session button would simplify graphical interface, provide the benefit of a simple user-friendly way to automatically initiate the call. It's kind of, your argument that it's not in exactly the right section, but it's sort of exactly on point. I don't know. Well, our point is, Your Honor, certainly if the board wrote the final decision in a different way, but that's how the board structured its arguments. So we're just responding to how the board structured its arguments. I understand the point Your Honor is making. The other point I wanted to address is- Just so I know, though, if I don't agree with you, if I find the material spanning 37 to 38 to adequately make a finding of motivation to combine adopting petitioner's argument, does that end this case, or do I still need to necessarily reach the other issues? If we do not win on motivation to combine, as Judge Toronto had asked me, that's our only basis. And you find that there is a motivation to bind, that would end the case. That is correct, Your Honor. We don't dispute the underlying reason of motivation to bind or something in the references. That's correct. The other thing I wanted to address, Your Honor, briefly with my time remaining, is the proving the absence of a negative and Google relies on the AC Tech case. And again, as we noted in our briefs, that case is distinguished because the court determined that the reference taught uncoded films and did not merely find that the reference did not teach codings. Again, much more on point is the IBM Bianco case, which is cited in our briefs again, but that one is, albeit non-presidential, that deals with a similar limitation, single sign-on operation. And there they found that silence would not by itself suffice for the petition to prove there was no user authentication action in this scenario. So we think that's much more relevant. With that, unless there are any other questions, we'll stand on our person. Thanks both counsel for the argument. The case is taken under submission. Thank you very much, Your Honor.